IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHAWN SMITH, ) | CASE NO. 1:06 CV 2923 |
| ) | |
| Petitioner, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | WILLIAM H. BAUGHMAN, JR. |
| CARL ANDERSON, Warden, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondent. ) | |

## Introduction

Before me by referral[1] is the petition of Shawn Smith for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Smith is now serving an eight to twenty-five year sentence in the Grafton Correctional Institution imposed after he pled guilty in 1992 to attempted aggravated murder, felonious assault and breaking and entering.[3]

In this petition, Smith, who is represented by counsel, raises four grounds for relief that all arise out of a purported violation by the State of the terms of the plea agreement accepted by Smith.[4] Essentially, Smith contends that the State breached his plea agreement in two ways: (1) by writing a letter to the parole board opposing Smith's request for parole after it had originally promised to stay silent, and (2) by changing the guidelines for

---

[1] ECF # 4.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.* at 6-11.

evaluating Smith's eligibility for parole after he had entered his plea in reliance on the prior guidelines.[5]

The State recognizes that under federal law a state plea agreement may be enforced as a contract. Nonetheless, it argues that the Ohio appeals court correctly ruled that since the provisions Smith seeks to enforce were not part of the written plea agreement or part of the record at the plea hearing, such promises cannot be specifically enforced.[6]

Of particular significance, Smith, in his traverse, has shifted the basis on which his claim concerning the new parole guidelines rests. As argued in the state courts and in the original petition, Smith's argument was that the State broke a promise to use the old guidelines. The state appeals court found no such promise by the State and thus no breach. However, citing to new federal case authority that was decided after he litigated this claim in state court and after he filed this habeas petition, Smith now contends that adopting and utilizing the new guidelines was an impermissible *ex post facto* enhancement of his sentence.

Because the best that Smith can hope to achieve with this new *ex post facto* argument is an immediate parole hearing under the old parole rules, not a release from confinement, I will recommend finding that this claim be dismissed as one properly brought pursuant to 42 U.S.C. § 1983 not under the federal habeas statute.[7]

---

[5] *See*, ECF # 8 at 7-8.

[6] *Id.*, at 10-11.

[7] *See, Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005).

Thus, I will recommend finding, as will be more fully developed below, that the Ohio appeals court did not act contrary to clearly established federal law in holding that the State did not breach the terms of Smith's plea agreement either in respect to promising not to intervene in any subsequent parole hearing or because it did not use of the old parole guideline as it purportedly promised to do as part of the plea agreement. However, as concerns the *ex post facto claim* first raised in a filing subsequent to Smith's traverse, I will also recommend that this new claim be ignored here so that it can be properly filed as an action under 42 U.S.C. § 1983.

## Facts

**A.    Underlying offense and plea**

Although not recounted in the state appellate decision, the underlying facts here are not disputed. In 1990, Shawn Smith married his 15 year-old pregnant girlfriend.[8] Their daughter was born shortly thereafter with serious medical problems and died five months later.[9] Soon after the infant's death, Smith's wife began seeing another man; a development, which coupled with the death of his daughter, Smith claims caused him to become distraught.[10] Alleging physical and emotional abuse, Smith's wife obtained a protective order against him.[11]

---

[8] ECF # 11 at 3.

[9] *Id.*

[10] *Id.*

[11] ECF # 9 (state court record) at 24 (Ohio Parole Board decision).

In June, 1991, Smith broke into the house next door to his mother-in-law's home (where his wife was then living) to wait for his wife so as, according to him, to talk to her.[12] From inside this house, Smith saw his wife leaving her mother's home with the man she was seeing.[13] At that point, Smith took a handgun and fired at his wife and her companion, wounding them both in the head.[14] Smith voluntarily turned himself in to the Kent, Ohio police two days later.[15]

Smith was indicted by the Portage County Grand Jury on two counts of attempted aggravated murder, each with a firearm specification, as well as one count of felonious assault with a firearm specification and one count of breaking and entering.[16] Smith originally entered pleas on all counts of not guilty and not guilty by reason of insanity.[17]

Lengthy plea negotiations commenced between Smith, who was represented then by the same private counsel as now represents him here, and the Portage County prosecuting attorney.[18] The negotiations resulted in a written plea agreement by which Smith agreed to plead guilty to two counts of attempted aggravated murder, one count of felonious assault

---

[12] ECF # 11 at 3.

[13] *Id.*

[14] *Id. See also*, ECF # 9 at 108 (indicating that Smith shot each victim twice in the head with both victims suffering "permanent injury as the bullets remain lodged in their brains").

[15] ECF # 11 at 3.

[16] ECF # 8 at 2.

[17] *Id.*

[18] ECF # 11 at 3.

with a firearm specification, and one count of breaking and entering.[19] That written plea agreement was filed with the trial court.[20] As the appeals court explained, in its final form, the plea agreement reflected a deal by which, "in exchange for [Smith's] guilty plea, the State agreed to forego prosecuting [Smith] on [unrelated] burglary charges and dismissed four misdemeanor charges pending in the Kent Municipal Court."[21] The written agreement, however, makes no reference to any promise by the State not to intervene in any future parole hearing nor to any specific reliance by Smith on the parole guidelines then in effect.

The trial court thereupon conducted a change of plea hearing.[22] An examination of the plea hearing transcript discloses first that nothing was said in that hearing concerning either a promise by the State not to intervene in any future parole hearing or that Smith was expressly entering his plea in reliance on the parole guidelines then in effect.[23] The hearing transcript further discloses that Smith was specifically asked by the trial judge as part of the plea colloquy if he had "been promised anything other than what I have been told here in this

---

[19] *State v. Smith*, No. 2004-P-0061, 2005 WL 2268838, at *1 (Ohio App. 11 Dist. Sept. 16, 2005). A copy of the Westlaw opinion is furnished here for the convenience of the District Judge.

[20] *Id.*

[21] *Id.* The dismissed misdemeanor charges involved driving under suspension, domestic violence, and telephone harassment. *See*, ECF # 9 (state record) at 235 (plea hearing transcript).

[22] ECF # 9 at 232-45.

[23] There was, however, a brief discussion as to how the parties agreed that "good time" credits should be computed so as to be clear that Smith would not be entitled to shock probation. *See*, *id.*, at 236-37.

courtroom today to secure a plea of guilty."[24] Smith responded, "No."[25] Accordingly, based on the plea colloquy, the written plea agreement, and the attorneys' written summary of the plea negotiations, the trial judge accepted the plea.[26] It should be noted that in the court's journal entry accepting the plea, the trial judge specifically states that "the underlying agreement upon which the plea was based was stated on the record in open court, which agreement was approved by the Court."[27]

**B.     Motion to withdraw the plea**

Almost ten years after the plea had been accepted and Smith had been sentenced, Smith moved to withdraw his plea.[28] In his motion, Smith argued that when the Ohio Adult Parole Authority (APA) denied his parole in December, 1999, on the grounds that new guidelines did not make him eligible for parole until December, 2009, his sentence had been effectively extended and his plea agreement had been breached.[29]

As part of this motion, Smith also filed a deposition from David Norris, the Portage County prosecuting attorney who conducted the plea negotiations for the State, in which Norris testified that "although parole eligibility was a major concern for [Smith], the State

---

[24] *Id.*, at 240.

[25] *Id.*

[26] *Id.*, at 7-8.

[27] *Id.*, at 8.

[28] *Id.*, at 10-17.

[29] *Id.*

-6-

was unable to promise [Smith] a specific date for parole, as the plea agreement could not bind the APA."[30] In the deposition, however, Norris did accept that the State agreed not to send a letter to the parole board when Smith became eligible for parole.[31]

The State responded in opposition, maintaining that the APA, in applying the new guidelines to Smith, had not breached the plea agreement.[32]

The trial court held a hearing on the motion.[33] Smith himself testified that he believed his plea agreement was that he would be eligible for parole in ten years, subject only to his behavior in prison, and further testified that his record in prison had been exemplary.[34] Smith's attorney, William Whitaker, testified that Smith's plea deal was made pursuant to the APA guidelines then in place under which Smith would have been eligible for parole in ten years depending on good behavior in prison and with the understanding that the Portage County prosecutor would not send a letter to the APA recommending a disposition in Smith's case.[35] In response, the prosecutor argued that no deal had ever been made as to when Smith

---

[30] *Smith*, 2005 WL 2268838, at *2.

[31] *Id.*

[32] ECF # 9 at 54-57.

[33] *Id.*, at 246-80.

[34] *Smith*, 2005 Wl 2268838, at *2.

[35] *Id.*

might be eligible for parole, citing the deposition testimony of the former prosecutor in that regard, and claiming that no letter to the APA had ever been sent by the prosecutor's office.[36]

Following this hearing, but prior to ruling on the motion, in April, 2004, Smith filed a renewed motion for specific performance of his plea agreement or, alternatively, to vacate his plea.[37] In that motion, Smith contended that the State had breached the plea agreement by sending a written communication to the APA in 1999 opposing Smith's parole, thus directly violating one of the terms of the plea agreement specifically attested to by the former prosecutor in a letter to defense counsel dated March 12, 1992.[38]

The trial court, in a one page decision, overruled Smith's motion to vacate his plea.[39] Smith thereupon timely filed a notice of appeal from that decision.[40]

## C.  Direct appeal

---

[36] *See*, ECF # 9 at 251. "The only agreement the State had was we wouldn't send a letter to the Parole Board or [make a] recommendation one way or the other. We would be silent on that and the State fulfilled its obligation in terms of not sending letters to the Parole Board. We stayed out of it. So the agreement binding the Parole Board [to an eligibility date] was never made." (Argument by Eugene L. Muldowney, Assistant Portage County prosecuting attorney).

[37] *Smith,* 2005 WL 2268838, at *2. Although the existence of this motion is attested to by the Ohio appellate court's opinion, and its contents summarized in the appeals court's decision, I have not found copies of the motion, or its attachments, in the state record submitted here.

[38] *Id.* Again, no originals of these letters appear in the record provided by the State. The presence of the letters and information as to their content are from the appellate court decision.

[39] ECF # 9 at 58.

[40] *Id*., at 59.

### *1.  The Ohio court of appeals*

In his appeal, Smith raised two assignments of error:

(1) The trial court erred in overruling [Smith's] motion for specific performance, or in the alternative for a new trial, because the state of Ohio unequivocally and admittedly violated the terms of the plea agreement upon which [Smith] relied in entering pleas of guilt.

(2) The trial court erred in overruling [Smith's] original motion for a new trial because the Adult Parole Authority, as an agent of the state, violated the plea agreement upon which [Smith] relied in entering the plea in this case by refusing to consider him for parole under the Guidelines in effect at the time he entered the plea and upon which he relied in entering the plea.[41]

In denying the first assignment of error, the Ohio appellate court initially observed that a plea agreement is essentially a contract, and that if it can be established that a term of the plea agreement was breached, a court may either permit the defendant to withdraw the plea or order specific performance.[42]  However, citing federal law including the Supreme Court's decision in *Santobello v. New York*,[43] the appeals court further noted that a breach cannot be established by reference to any promise between the parties not known to the court.[44]  Accordingly, despite a letter by the Portage county prosecutor to Smith's counsel promising not to communicate with the parole board, the appellate court ruled that this promise could not be the basis for any breach of Smith's plea agreement because it was never

---

[41] *Smith*, 2005 WL 2268838, at *3.

[42] *Id.*

[43] *Santobello v. New York*, 404 U.S. 257 (1971).

[44] *Smith,* 2005 WL 2268838, at **3-4.

revealed to the trial court in the written plea agreement, the written plea itself or in the plea colloquy attendant to the court's acceptance of the plea.[45]

As to Smith's assignment of error concerning the effect of new parole guidelines, the Ohio panel concluded first that there was no evidence that Smith's plea agreement required the APA to employ the earlier guidelines and so the use of new guidelines was not a breach.[46] Moreover, although conceding that the new APA guideline have extended the time Smith must spend in prison before being eligible for parole, the Ohio appeals court also found that, because any injury to Smith from the new guidelines was done after he entered his plea, the proper remedy would not be a withdrawal of the plea, but may be a civil declaratory judgment as to Smith's right to have his parole hearing conducted under the earlier guidelines.[47]

---

[45] *Id.*, at *4.

[46] *Id.,* at **5-6.

[47] *Id.*, at *6.

### 2. *The Supreme Court of Ohio*

Smith thereupon timely appealed this decision to the Supreme Court of Ohio, raising the following two propositions of law:

(1) It is a denial of due process of law for the State to induce a plea to felony charges by making a clear and unambiguous promise and then violating that promise.

(2) When the criteria by which a parole will be considered is a critical part of the negotiations for a plea to criminal charges, meaningful consideration of parole requires that the criteria in effect at the time of the plea must be applied to the consideration of parole.[48]

The State filed a response,[49] and the Supreme Court of Ohio denied Smith leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[50] The record does not indicate that following this decision by the Supreme Court of Ohio Smith sought a writ of certiorari from the United States Supreme Court.

### D. Federal habeas petition

Approximately ten months from when his leave to appeal was denied by the Ohio Supreme Court, Smith filed the present petition for federal habeas relief, asserting four grounds for relief that essentially repeat verbatim the arguments presented to the Ohio appellate court and the Supreme Court of Ohio:

(1) It is a denial of due process of law for the state to induce a plea to felony charges by making a clear and unambiguous promise and then violating that promise.

---

[48] ECF # 9 (state record) at 151.

[49] *Id.*, at 186-99.

[50] *Id.*, at 216.

(2) When the criteria by which parole will be considered is a critical part of the negotiations for a plea to criminal charges, meaningful consideration of parole requires that the criteria in effect at the time of the plea must be applied to the consideration of the plea.

(3). Petitioner should be granted either specific performance or, in the alternative, a new trial, because the State of Ohio unequivocally and admittedly violated the terms of the plea agreement upon which petitioner relied in entering pleas of guilty.

(4) Petitioner should have been given a new trial because the Adult Parole Authority, an agent of the state, violated the plea agreement upon which petitioner relied in entering the plea, by refusing to consider him for parole under the guidelines in effect at the time he entered the plea.[51]

Smith also asks for an evidentiary hearing.[52]

In response, the State asserts that the decision of the Ohio appeals court in denying Smith's claims was a reasonable application of clearly established federal law and so the present petition should be denied.[53] Smith filed a traverse[54] in which he re-states the arguments originally made to the Ohio appeals court.

Significantly, nearly nine months after filing the traverse, Smith filed a "Notice of Relevant Authority"[55] where, for the first time in any court and pursuant to the Sixth Circuit's 2007 decision in *Michael v. Ghee*,[56] he raises the argument that Ohio's adoption of new

---

[51] ECF # 1 at 8-11.

[52] ECF # 11 at 15-17.

[53] ECF # 8.

[54] ECF # 11, captioned "Response to Respondent's Answer."

[55] ECF # 12.

[56] *Michael v. Ghee*, 498 F.3d 372 (6th Cir. 2007).

-12-

parole guidelines subsequent to his conviction and sentencing unconstitutionally operated *ex post facto* to increase the punishment attached to his crime.[57] Although Smith still largely attempts to present the error attendant to the use of new APA guidelines as one of a breach of the plea agreement, as he argued throughout state courts,[58] he argues here for the first time that the use of new guideline adopted after his plea implicated the *ex post facto* clause of the Constitution.

The State filed no response to Smith's provision of new authority.

## Analysis

**A.     Standards of review**

*1.     Unreasonable application of clearly established federal law*

It is well-settled that the writ may issue only when a state appeals court correctly identifies the governing legal principle applicable to the petitioner's claim but then unreasonably applies that principle to the facts of the case.[59] The correct test here is whether the state court decision was "objectively unreasonable" and not merely erroneous or incorrect.[60]

---

[57] ECF # 12 at 1.

[58] *Id.*, at 3. Contending that the essence of the promise Smith relied on during the plea negotiations was "a promise not to violate the *ex post facto* clause" and thus the Sixth Circuit's holding in *Michael* that the application of new APA guidelines to prisoners convicted before the guidelines' adoption violated the *ex post facto* clause is support for Smith's claim that the State breached its promise in the plea agreement.

[59] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[60] *Id.*, at 409-11.

## *2.  Breach of pleas*

Clearly established federal law holds that for a guilty plea to be valid it must be voluntary and a "knowing intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences."[61] Voluntariness is determined by considering all the relevant circumstances surrounding the plea.[62] The State has the burden of showing that the petitioner's guilty plea was voluntary, intelligent and knowing, and generally satisfies this burden by producing a transcript of the plea hearing.[63] A state court finding that a plea was proper is accorded a presumption of correctness, unless the transcript is inadequate to demonstrate that the plea was voluntary, intelligent and knowing.[64]

Clearly established federal law also holds that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[65] However, it is equally clear that any promise by the prosecutor that a defendant would later seek to enforce must be made known to the court at the time the plea is accepted.[66] Thus, where a plea is accepted after an

---

[61] *Brady v. United States*, 397 U.S. 742, 748 (1970).

[62] *Id.*, at 749.

[63] *Stumpf v.Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004), *vacated in part on other grounds, Bradshaw v. Stumpf*, 125 U.S. 175 (2005).

[64] *Id.*

[65] *Santobello v. New York*, 404 U.S. 257, 262 (1971).

[66] *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties."

adequate plea colloquy conducted in open court, "absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court."[67]

## B.    The plea agreement

Here, the state appeals court directly cited to the clearly established federal law controlling the effect of promises by the prosecutor that were not incorporated into the written plea agreement nor referenced during the plea hearing before the court. Citing to the unpublished Sixth Circuit case of *United States v. Martinez*,[68] which relies on the published precedent of *Baker* that courts cannot enforce secret terms of plea agreements,[69] the state appeals court hearing Smith's claims noted that "neither [Smith's] written plea agreement nor the written guilty plea referenced a promise by the State to withhold a recommendation from the parole board."[70] Moreover, the Ohio appellate court, quoting from the plea hearing transcript, also pointedly observed that Smith denied to the trial judge on the record that he had been promised "anything other than what I [the court] have been told here in this court

---

[67] *Id.*; *see also*, *United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991) (defendant not permitted to establish the existence of another, separate agreement with the state where neither defendant nor counsel made any reference to any other agreements when specifically asked about that during the plea colloquy).

[68] *United States v. Martinez*, 16 F. App'x 410 (6th Cir. 2001).

[69] *Id.*, at 413.

[70] *Smith*, 2005 WL 2268838, at * 4.

room today to secure a plea of guilty."[71] Accordingly, the state court concluded that because no promise by the State regarding communication with the APA was in the plea as accepted and understood by the trial court, there was no breach in this regard and so no basis for either requiring specific performance or permitting Smith to vacate the plea.[72]

While Smith now argues strenuously that the existence of a promise by the State not to communicate with the APA is fully established by deposition evidence presented later and is, in fact, not contested, he does not provide a basis by which this Court can overlook the fact that Smith did not bring any of this to the attention of the trial court at the plea hearing despite being directly asked if there were any other promises beyond what had been disclosed that had been made to him to induce the plea. His failure to, as the *Baker* court stated, offer any reason why he did not inform the court when asked about any additional promises compels me to recommend finding that the state court did not unreasonably apply clearly established federal law by holding that Smith's enforceable plea agreement only "consist[ed] of the terms revealed in open court."[73]

Similarly, the state appeals court found nothing in the record at the plea hearing, or in the written agreement, by which the prosecutor made any promises about restricting the APA in evaluating Smith's eligibility for parole.[74] Instead, as the court found, Smith merely

---

[71] *Id.*

[72] *Id.*

[73] *Baker*, 781 F.2d at 90.

[74] *Smith*, 2005 WL 2268838, at * 5.

-16-

asserted that "revised guidelines were not contemplated by the plea agreement," and so a *per se* breach should be inferred from their eventual use.[75] For the same reasons stated earlier, I recommend finding that the state court decision denying Smith's claims arising out of the use of new parole guidelines was not an unreasonable application of clearly established federal law.

**C.     The *ex post facto* claim**

As noted, approximately nine months after filing his traverse, Smith filed a "Notice of Relevant Authority" which, for the first time, raised the issue, based on new Sixth Circuit case authority, that the use of new APA guidelines in Smith's parole procedure was an impermissible *ex post facto* violation.[76] Citing to *Michael v. Ghee*,[77] Smith contends that because the retroactive application of the new 1998 Ohio APA guidelines creates a sufficient risk of increasing the measure of punishment attaching to his crime, permitting that retroactive application would constitute an *ex post facto* violation.[78] Although he still attempts to connect this argument to his original claim concerning the use of new guidelines – that the State had promised in the plea agreement not to change the guidelines applying to

---

[75] *Id.*, at *6. "Unfortunately, there was nothing placed upon the record at the plea hearing [concerning the mandatory use of only parole guidelines in place at the time of conviction] that afforded [Smith] his requested relief in this criminal appeal."

[76] ECF # 12.

[77] *Michael*, 498 F.3d 372.

[78] *Id.*, at 1-2.

Smith[79] – the essential claim has in fact shifted from one relying on a breach of a promise not to use new guidelines to one based on the legal principle that the retroactive use of new guidelines, whether a broken promise or not, is an *ex post facto* violation because doing so creates a risk that Smith's punishment will increase.

Although Smith has attempted to assert a new ground for relief not pled in his petition by way his notice of supplemental authority, he has not moved to amend his petition to add that ground. It is, therefore, not technically part of the petition pending in this case. Nevertheless, even if it was, relief on that ground would not be appropriate here.

It is well-settled that a habeas claim must first be exhausted by fairly presenting it through the state appeals system to the state's highest court.[80] In that regard, it is equally well-established that fair presentment means that the same claim under the same theory must be presented to state courts as is presented to the federal habeas court.[81] Smith's *ex post facto* claim has not been fairly presented to the state courts and would be, therefore, unexhausted.

In addition to fair presentment and exhaustion issues potentially presented by this late claim, there is the matter of this *ex post facto* argument being raised as a habeas claim instead of as a § 1983 action. In *Wilkinson v. Dotson*,[82] the United States Supreme Court was presented with claims that precisely addressed the effect of applying Ohio's new parole

---

[79] *Id.*, at 3.

[80] *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999).

[81] *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).

[82] *Wilkinson v. Dotson*, 544 U.S. 74 (2005).

-18-

guidelines to prisoners convicted under the old guidelines in the context of whether the claims were properly filed as a habeas action or under § 1983.  Rejecting the State's argument that the claims were properly filed as a habeas case because they attacked the duration of a conviction, the Court stated that while the litigants obviously hoped to shorten their time in prison, the claims themselves were actually more correctly § 1983 ones since a favorable judgment for the litigants would not "'necessarily imply the invalidity of [their] conviction[s] or sentence[s].'"[83]  Rather, success "means at most new eligibility review, which at most will speed *consideration* of a new parole application.  Success [therefore] ... means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten [the petitioner's] prison term."[84]  Accordingly, the Court concluded that because success would not invariably require early release or invalidating a conviction, the claim was properly brought under § 1983 and was not at "'the core of habeas corpus.'"[85]

Here, the Court's analysis is apt.  Success on Smith's claim would neither invalidate his conviction[86] nor result in an order for his conditional release. At best, success for Smith would be that Ohio provide him a parole hearing pursuant to the guidelines in place at the time of his conviction.  Thus, I recommend concluding that this claim is properly a § 1983 claim, not a habeas claim.

---

[83] *Id*., at 82, quoting *Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

[84] *Id.* (emphasis in original).

[85] *Id*., quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).

[86] A claim seeking that relief was addressed above where it was recommended that it be denied.

Since this *ex post facto* claim was only asserted after Smith filed his traverse and would be unexhausted as not fairly presented if it would now be considered, and because the claim is properly not a habeas claim, but one arising under § 1983, I recommend that the *ex post facto* claim be treated as not properly part of the instant petition.[87]

## Conclusion

For the foregoing reasons, I recommend that Shawn Smith's petition for habeas relief be denied.

Dated: August 22, 2008      s/ William H. Baughman, Jr.
                            United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[88]

---

[87] *See, Jones v. Parke*, 734 F.2d 1142, 1145 (6th Cir. 1984).

[88] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).